# Hardenburg *v.* Beecher.

1. A defendant in an execution whose land has been sold at sheriff's sale is entitled to retain possession between the date of the sale and the acknowledgment of the sheriff's deed to the purchaser, and to enjoy, during that period, the rents, issues, profits, ripening crops (if he severs them), use of open mines, quarries and oil wells, including the oil from "flowing" wells.

2. But if said defendant in the execution, before the acknowledgment of the sheriff's deed, abandons or surrenders possession of the land to the purchaser at the sheriff's sale, the latter immediately becomes lawfully entitled to all the above-mentioned incidents of title and possession; and the same, whether remaining part of the freehold or severed and converted into personalty, cannot be levied upon and sold in execution by a judgment creditor of the former owner.

3. Under a judgment against A., his title to certain land upon which were two "flowing" oil wells was taken in execution and sold at sheriff's sale to B. on July 26th 1882. The sheriff's deed to B. was not acknowledged until November 27th 1882. Soon after the sheriff's sale A. abandoned possession of the land, and B. entered into possession, collected the oil as it flowed from said wells, and stored it in tanks on the premises. On October 16th 1882, the said oil then in tank was levied on under an execution upon a judgment held by C. against A. and sold at sheriff's sale as A.'s property. In replevin by the purchaser of said oil against B. :

*Held*, that the plaintiff was not entitled to recover.

4. The respective interests of a purchaser of land at sheriff's sale, and of the defendant in the execution, during the interim between the date of the sale and the acknowledgment of the sheriff's deed, commented upon and explained.

May 24th 1883. Before MERCUR, C.J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Warren County :.* Of January Term 1883, No. 382.

Replevin, brought November 6th 1882, by Moses Beecher and W. H. Copeland against G. W. Hardenburg and B. F. McClure, for "one hundred barrels crude petroleum." The property was replevied and a claim property bond given. Plea, *non cepit*, and property.

The following case stated, in the nature of a special verdict, was filed :

The defendants and one M. D. Archibold, being the owners of fifty acres of land in Mead township, Warren county, and state of Pennsylvania, on December 21st 1881, sold twenty-five acres thereof, by articles of agreement, to Fred Merrill and George Markert, who took possession under their contract, and finished drilling two wells already commenced thereon. Part of the purchase money was paid and judgment notes taken for

[Hardenburg v. Beecher.]

the balance, including balance of purchase money of some materials, which were subsequently entered of record.

M. D. Archibold, for the use of the First National Bank of Warren, Penn., entered one of these judgment notes for purchase money against said Merrill and Markert, June 24th 1882, to No. 118, June term 1882, being for the sum of $510.42, and June 24th 1882, issued execution thereon to No. 25, September term, 1882, on which was made the sum of $467 from sale of personal property. The plaintiffs, Beecher & Copeland, June 24th 1882, entered a judgment for the sum of $1,200, against said Merrill and Markert to No. 119, June term 1882, and issued execution thereon June 24th 1882, to No. 26, September term 1882.

G. W. Hardenburg entered another judgment for purchase money of said land against said Merrill and Markert for the sum of $627.42, to No. 135, June term 1882, entered June 30th 1882, on a judgment note dated December 21st 1881, and on June 30th 1882, issued execution thereon to No. 30, September term 1882. There was nothing contained in any of these purchase money judgments which showed that they were given for the balance of the purchase money of the land sold on the executions, nor on the confessions of the judgments.

The interest of the said Merrill and Markert in the said twenty-five acres, under said articles, was taken in execution on these three several writs and sold July 26th 1882, to the defendants, G. W. Hardenburg and B. F. McClure, for the sum of $1,100, and the deed therefor was acknowledged on November 27th 1882. The costs of sale only were then paid, but after the acknowledgment of the deed the balance of the bid, on application to· court, was applied upon the purchase money judgments of Hardenburg, McClure and M. D. Archibold.

At the date of the sale to said Hardenburg and McClure, July 26th 1882, there were two oil wells on said twenty-five acres, being the two wells above mentioned, flowing several barrels of oil per day.

Soon after said sale defendants took possession of said twenty-five acres, said Merrill and Markert having abandoned the same, repaired the tanks and wells, and saved the flow of oil.

The plaintiffs, Beecher and Copeland, having returned their writ above stated, issued an alias fi. fa. on their judgment, September 2d 1882, to No. 13, December term 1882, and levied on the oil in question in tanks on the land, being oil produced on said twenty-five acres from the said wells, after the sale of the said twenty-five acres by the sheriff to the defendants, and before the acknowledgment of the deed for the same land to them. Said oil was levied on, October 16th 1882, and sold as the prop-

erty of Merrill and Markert to plaintiffs October 26th 1882, being one hundred barrels crude petroleum, sold at ninety cents per barrel.   Said oil was sold in tanks on the land then in possession of the defendants.

Said defendants claimed the oil by virtue of the sheriff's sale to them of the land as above stated, and refused to surrender the same to the plaintiff, whereupon plaintiff brought this action of replevin for said one hundred barrels of crude petroleum.

Now, if upon the facts aforesaid the court shall be of the opinion that said oil, at the time of the levy and sale thereof on the execution of plaintiffs, was subject to levy and sale by virtue of an execution against said Merrill and Markert as the property of said Merrill and Markert, then judgment to be entered in favor of the plaintiffs for the sum of ninety dollars. If the court shall be of the opinion said oil belonged at the time of said levy and sale to defendants, G. W. Hardenburg and B. F. McClure, then judgment to be entered for the defendants.

After argument the court filed the following opinion and judgment:

" Until a sheriff's sale of real estate has been consummated by the acknowledgment and delivery of a deed, the debtor is entitled to the possession, with all its attendant advantages.   A bidder to whom property has been struck down has an inceptive interest which may be bound by the lien of a judgment before acknowledgment of the sheriff's deed.   Yet it by no means follows that after he has obtained his deed his title relates to the date of his bid in any such sense as to divest from that time the ownership of the debtor whose land has been sold.   Undoubtedly it does not.   Such is the language used in Garrett *v.* Dewart, 7 Wright 349.   It is true that the question in that case was the right of the purchaser to rent accruing before the acknowledgment of the deed ; but we can see no difference in principle between such a case and one where the defendant derives profit from the conversion into personal estate prior to the acknowledgment of the deed of what was at the date of the bid parcel of the reality.

" The Act of March 29th 1822, cited by defendants, gives to the purchaser, after he shall have been declared the highest bidder, a writ of estrepement to stay waste.   The case of Robb *v.* Mann, 1 Jones 300, also cited by the defendants, decides that the purchaser at an administrator's sale may maintain an action on the case against a wrong-doer for an injury done to the land between the sale and its confirmation.   The Act of Assembly and the decision of the Supreme Court in the case cited seem to rest upon the continued ownership by the debtor and the heirs of the intestate until the acknowledgment and

[Hardenburg *v* Beecher.]

delivery of the deed in the one case, and the confirmation of the sale in the other.

" We do not understand from the facts stated that defendants had any authority from Merrill and Markert to take possession of the twenty-five acres of land, or to repair the tanks and save the oil. From the fact that no such authority is stated we infer none existed.

" March 5th 1883, judgment directed to be entered against defendants and in favor of plaintiffs for the sum of ninety dollars."

The defendants took this writ of error, assigning for error the entering judgment for the plaintiffs on the case stated.

*Wilbur* (*Schnur* with him), for the plaintiffs in error.

*R. Brown*, for the defendant in error.—The oil, when raised from the ground, by its flow, became personalty ; it was severed from the freehold, and could be sold by the debtor in the usual way, like lumber, fire-wood, coal, &c. If the debtor can sell and pass his title, the sheriff can accomplish the same object through the medium of a levy and sale by virtue of an execution.

Mr. Justice CLARK delivered the opinion of the court October 2d 1883.

A purchaser at a sheriff's sale, before his deed has been acknowledged, has an inceptive interest in the land : Morrison *v.* Wurtz, 7 Watts 437 ; such an interest as will be bound by a judgment : Robb *v.* Mann, 1 Jones 300. The subsequent acknowledgment and delivery of the sheriff's conveyance inures to the benefit of lien creditors, and, as in the case of a private individual sale, the incumbrancer by relation has the benefit of his security to the extent of the whole estate; such an estate is attended with the ordinary consequences of sale by an individual : Hawk *v.* Stouch, 5 S. & R. 161 ; Stephen's App., 8 W. & S, 188 ; Slater's App., 4 Casey 170. The title acquired under the sheriff's deed relates back to the time of the sale, not merely to the date of the deed : Hoyt *v.* Koons, 7 Harris 277 ; but not so as to wholly divest the legal ownership of the debtor, who, until the acknowledgment of the deed, is entitled to the possession, with all its attendant advantages : Garrett *v.* Dewart, 7 Wr. 342. A judgment entered against the debtor after the day of sale is not a lien upon the land, although the deed to the purchaser was not acknowledged until a subsequent time : Hahn *v.* Rhoads, 1 P. & W. 484.

It follows as the result of all these cases, that if the deed be subsequently acknowledged, the vendee has such inceptive title

[Hardenburg *v.* Beecher.]

by his mere purchase as will be bound by the lien of a judgment, whilst the debtor has no such title remaining as will support a lien; if, however, the acknowledgment be refused, the vendee's contract is rescinded, and the debtor's title remains as if no sale had been made.

The debtor is, however, entitled to the possession until the acknowledgment; the purchaser has by his mere purchase acquired no title to the present enjoyment. This right to possession carries with it its attendant advantages, the right to the growing crops as they may mature; the right to an ordinary use of a mine or quarry, or to the flow from an oil well. The debtor will not be allowed to commit waste or destruction of the premises. The sheriff's vendee is, therefore, only entitled to the growing grain, to the *use* of mine or quarry, and the oil upon the lands embraced within his purchase, subject to the right accruing to the debtor under his possession.

The grain, the coal, or the oil, so far as they are of the realty, belong to the vendee; the debtor may, however, pending the sale, and until the acknowledgment of the deed, cut the ripened grain, mine the coal, or receive the flow of oil, and apply the product to his own use. Whilst these products are attached to the realty they belong to the vendee, and it is by ordinary severance only that they become the property of the debtor.

The grain as a growing crop, the coal in the mine, or the oil in the well, could not, after the sale of the land, be seized and sold upon execution as the property of the debtor, nor would the debtor be allowed to sell or waste them. But if, before the acknowledgment, the grain ripen and the debtor sever it from the land, if he continue the ordinary work of the mine, or operate the oil well, the grain, the coal, and the oil, the ordinary products of the land, during the lawful possession of the debtor, are his; these are some of the attendant advantages of his possession. After severance and possession taken by the debtor, these products are of course liable to execution for his debts.

But if he voluntarily abandon the possession of the land, and surrender to the sheriff's vendee, he loses all these attendant advantages.

If the vendee enter under these circumstances, he is lawfully in possession; the subsequent acknowledgment of the deed gives him title by relation from the date of the sale. The debtor's right to remain until the sale is fully completed, and to enjoy its incidental advantages as such, are not the subject of execution, nor is he obliged to remain for the benefit of his creditors; the privilege is a personal one, and he may exercise it or not, as he chooses.

[Hardenburg v. Beecher.]

Hardenburg and McClure bought the lands and the oil, and if Merrill and Markert, the debtors, without any fraud, abandoned their possession and suffered the vendees to enter, if they did not stand upon their rights or claim the advantages incident to possession, but voluntarily relinquished all, we think the vendees were justified in making an entry for the purpose of securing the oil which flowed from the lands they had already purchased, and which were subsequently conveyed to them. If, whilst lawfully in possession, they erected tanks and received the flow of oil from the well, which otherwise would have gone to waste, the subsequent acknowledgment of the deed would as certainly have confirmed their title to the oil, part and parcel of the land when they bought, as to the land itself. Merrill and Markert might have remained pending the acknowledgment of the sheriff's deed and received and claimed this oil as their own, but they were not obliged to do so. They cannot complain, therefore, and we cannot see how their creditors can complain, as the claim of these creditors to the oil can occupy no higher place than that of Merrill and Markert.

The judgment is therefore reversed.