## High v. High

*Emanuel Weiss* and *Oliver Goldsmith*, for plaintiff.
*Stevens & Lee* and *Allan K. Grim*, for defendant.

MAYS, J., January 6, 1936.—The plaintiff avers that on or about April 23, 1927, he started to construct a house or residence on lots situate in Robesonia, Berks County, purchased by him from Robert I. Kintzer and wife; that he personally performed work and labor and engaged various contractors and workmen to perform work and labor in and about the premises and purchased from various dealers materials which were incorporated in the said building; that the work and labor so performed (exclusive of the work and labor performed by the plaintiff) and materials furnished amounted to over $7,500, all of which was paid for by him with the exception of $2,500 supplied by the defendant; that when the building was completed about September 1, 1929, the plaintiff and the defendant, then lawfully intermarried and living together as husband and wife, moved into the said structure and continued to live and reside therein and make the

same their home until the time when marital difficulties arose, to wit, during 1931; that during the years 1926 and 1927 the plaintiff became involved in a series of automobile accidents, whereupon the defendant represented to the plaintiff that she feared there was danger and likelihood that the plaintiff might incur great liability for damages which would result in the loss of said property; that the defendant represented, stated and declared to the plaintiff that if he would place the title to the property and premises in the name of the defendant, he would thereby avoid and escape any such danger and likelihood of loss of said property, and that the defendant would thereafter hold the property and premises in her name, and that the plaintiff would at all times thereafter have and own a substantial, beneficial, and equitable interest in the property of the value of $5,000; that because of the close relationship existing between the parties and by reason of the trust and confidence which the plaintiff then had in his wife, and relying upon her representations and promises, the plaintiff on or about September 14, 1927, conveyed the title to the defendant; that said conveyance was not intended to be absolute, but was a trust; that the $5,000 mentioned in the conveyance as consideration was not then, nor at any time, paid by the defendant to the plaintiff, nor intended to be then paid, but was inserted in the deed for the purpose of stating the amount or extent of the plaintiff's beneficial and equitable interest in the premises; and that the defendant, in violation of the trust and in fraud of the plaintiff's rights, is about to convey away, mortgage or otherwise encumber said property; and prays that a lien be impressed upon the property in favor of the plaintiff to the extent of his interest therein.

The defendant, after admitting that she requested the plaintiff to convey the title to said property to her, avers that this was done because she had paid for the property entirely out of her own money; she denies that she gave or offered to give the plaintiff a beneficial and equitable

interest, averring that the conveyance was absolute, and that it was not the intention of the parties or anyone to establish a trust in the premises for any amount. She further avers that the alleged trust is void and that the action is barred by the statute of limitations.

The issues are: (1) Did the plaintiff at the time of the conveyance to the defendant have a pecuniary interest in the premises conveyed? (2) Was the deed a voluntary conveyance in the sense that the defendant became the absolute owner, or was it rather in the nature of a trust for the plaintiff to the end and effect that he would at all times thereafter have and own a substantial, equitable, and beneficial interest in the premises?

## Findings of fact

1. The plaintiff and the defendant were married in 1910, and lived and cohabited together as man and wife until 1931.

2. The plaintiff started to construct a residence on ground which he acquired from Robert I. Kintzer and wife and for which he received a deed in his own name.

3. After receiving the deed to the premises, both the plaintiff and the defendant continued with the construction of the said residence, purchasing quantities of building material which were used in the construction of the premises, and engaging and paying various laborers and workmen. The plaintiff, a carpenter by trade, worked in and about the construction of the building for long periods of time.

4. When the building reached a stage in its construction where it became habitable, both the plaintiff and the defendant, then lawfully intermarried and living and cohabiting together as man and wife, moved into the premises and continued to live and reside there together in such relationship until they separated in 1931.

5. During the years 1926 and 1927 the plaintiff became involved in certain minor automobile collisions.

6. Following the said accidents, the defendant sug-

gested to the plaintiff that his real estate holdings might be jeopardized by a possible liability for damages accruing therefrom, and suggested a conveyance to her.

7. The defendant promised and agreed that if such conveyance were made she would hold the title so that the plaintiff would at all times thereafter have and own a substantial, beneficial, and equitable interest in the property.

8. The plaintiff relied upon the defendant's aforesaid declarations, promises, and agreements, and by reason of his trust and confidence in her conveyed title to the premises to the defendant by deed dated September 14, 1927, recorded in deed book vol. 657, p. 511, Berks County records.

9. The consideration of $5,000 recited in the deed was never received by the plaintiff.

10. The fair and reasonable market value of the property at or about the time of its erection and completion sometime during the years 1927 and 1928 was $10,000.

11. The fair and reasonable market value of the property at or about the time the bill was filed in this case, December 20, 1932, was at least $4,500.

## Discussion

Title to real estate can be settled ordinarily only by a writing between the parties. The statute of frauds and perjuries, however, has been so interpreted as not to make it the means of fraud and wrong, but to do equity and right. Certain cases of verbal arrangements have therefore been excepted from the operation of the statute. It has been urged that the alleged verbal contract concerning the consideration and the holding of the property in trust amends the terms of the deed. The delivery of the deed was only a part of the contract between the parties, and a portion of the consideration which was to be passed was the interest of the husband, the former owner.

I am satisfied that the defendant in this case procured

a title from her husband which she would not have obtained except because of a confidence reposed in her. The deed in question recites a consideration of $5,000. Admittedly this did not pass. Obviously it was inserted in the deed as some evidence of an agreement between the parties that the plaintiff was to have some interest therein. There can be no doubt that the plaintiff contributed some money and labor to the acquisition of the property and the erection of the building thereon. The plaintiff testified in support of the averments of his bill that prior to the making of the deed the defendant said to him, "That I should put the deed of the property in her name for the sum of $5,000; that she would hold it in trust; that I would at all times have an interest in the home for the sum of $5,000." When asked why he made the deed to her, he replied: "The reason I made the deed was because I confided my trust and relied on my confidence in her at the time, and I believed in her words that if I would make this deed to her she would hold the property; that I would at all times have an interest in the property."

Henry G. Shimp, the scrivener, a witness called by the plaintiff, corroborated the plaintiff in some detail. Asked whether any statement was made by the defendant prior to delivery of the deed with reference to the consideration, he said: "As I said, I did not remember that, but the consideration was there that the property belonged to them and that was to safeguard Clayton High's interest in the property as I have indicated." Being asked this question concerning the consideration: "Was there anything said about its payment in your presence by either of the parties?" his answer was: "Whether it was to be paid? It was not to be paid, not at that time. In other words, this was not intended to be an absolute transfer of title."

There is additional corroboration in the testimony of one Alvin G. Hertzog, who stated that the defendant told him that "she will see that (plaintiff) gets his money in time to come".

"Where one procures a title which he could not have obtained except by a confidence reposed in him and abuses the confidence, he becomes a trustee *ex maleficio*": Seichrist's Appeal, 66 Pa. 237.

The plaintiff's failure to bring the action sooner than he did does not bar him from maintaining it. He had a right to rely upon her statements and promises, and, so long as they were living together as man and wife, and she was holding the property as their home, he was justified in believing that she had acted in good faith in obtaining the property. It was not until they separated that she repudiated her promise and refused to carry out the purpose for which the deed was made. The statute of limitations is no bar.

"Under the Act of April 22, 1856, P. L. 532, where the husband and wife are in possession of the property and the husband claims to be the *cestui que trust* of property to which the wife holds the legal title, the statute will not run as against him": Knecht v. Reichard et al., 22 Dist. R. 913.

It will be noted that the establishment of a trust as alleged in the plaintiff's bill would practically set aside the provisions of the deed in that the trust would be for $5,000 in a property the fair market value of which, according to the defendant's testimony, is but $4,500. Such a result would be inequitable and unfair. It must be remembered that not only the plaintiff but also the defendant contributed very materially, not only in energy but in money, to the construction of what was to be their domicile. Under such circumstances she should not be denied a financial interest in this property. This would be unfair to her, just as it would be unfair to him under the circumstances surrounding this whole transaction to deny him any interest at all.

A trust to the extent of $5,000 could well have been sustained under the testimony if in point of fact the property would have had a value at the time of the institution of the proceedings of at least $10,000; but since the value

of the property has depreciated, it is only fair that both should share the loss. Accordingly, the property will be impressed with a trust, not to the extent of $5,000, but in the sum of $2,250.

### Conclusions of law

1. In order to be entitled to a decree in this case, it is incumbent upon the plaintiff to prove the allegation of his bill that the conveyance to the defendant was made and accepted subject to the trust alleged in said bill.

2. The facts and evidence in this case are sufficient to support an inference of a trust such as the plaintiff's bill alleges as the basis of the decree sought against the defendant.

3. The title here held by the defendant is not absolute, but is subject to a trust in favor of the plaintiff to the extent of $2,250.

4. A lien in the amount of $2,250 in favor of the plaintiff is impressed upon the premises.

And now, to wit, January 6, 1936, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision and forthwith to give notice of the same to the parties or their counsel of record sec. reg.

From Charles K. Derr, Reading.